Elizabeth L. Musser, SBN 203512
Yvonne M. Schulte, SBN 237868
TRESSLER LLP
1901 Avenue of the Stars, Suite 450
Los Angeles, CA 90067
Telephone: (310) 203-4800
Facsimile:  (310) 203-4850
Email:  emusser@tresslerllp.com
         yschulte@tresslerllp.com

Attorneys for Plaintiff
EVANSTON INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| EVANSTON INSURANCE COMPANY, | CASE NO. |
|---|---|
| Plaintiff, | |
| v. | **COMPLAINT FOR DECLARATORY RELIEF** |
| VERSA CARDIO, LLC, | |
| Defendant. | |

Plaintiff Evanston Insurance Company ("EIC") hereby makes its Complaint against Versa Cardio, LLC ("Cardio") pursuant to 28 U.S.C. § 1332(a)(1), and alleges as follows:

## INTRODUCTION

1. EIC brings this action to obtain a declaration that it has no coverage obligations to Cardio in the action entitled *Robert W. Mauthe, M.D., P.C. v. Versa Cardio, LLC*, Case No. 5:16-cv-00570-JLS (E.D. Pa.) (previously pending in the Middle

District of Pennsylvania under Case No. 3:15-cv-00657-UN3 (M.D. Pa.)) (the "Mauthe Litigation") under EIC insurance policy number EO855520, effective December 2, 2013 to December 2, 2014 (the "2013-2014 Policy") and EIC policy number EO858676, effective December 2, 2014 to December 2, 2015 (the "2014-2015 Policy") (together, the "EIC Policies"). EIC also seeks a declaration that it has a right to reimbursement of defense expenses incurred on behalf of Cardio in the Mauthe Litigation pursuant to *Buss v. Superior Court (Transamerica Insurance Company)*, 16 Cal. 4th 35 (1997), that it has a right to reimbursement of any indemnity payments made on behalf of Cardio in the Mauthe Litigation pursuant to *Blue Ridge Insurance Company v. Jacobsen,* 25 Cal. 4th 489 (2001), and that it has a right to withdraw from the defense of Cardio in the Mauthe Litigation.

## THE PARTIES

2. Plaintiff EIC is now and was at all relevant times a corporation formed under the laws of the State of Illinois, with its principal place of business in Deerfield, Illinois.

3. EIC is informed and believes, and thereon alleges, that Cardio is a limited liability company organized under the laws of the State of California with its principal place of business in Corona, California. Cardio is named as a defendant to the Mauthe Litigation.

## JURISDICTION

4. EIC files this action in the United States District Court for the Central District of California, Eastern Division on the basis of diversity of citizenship.

5. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a)(1), because there is complete diversity between plaintiff EIC, on the one hand, and defendant Cardio on the other hand, and the amount in controversy exceeds $75,000, exclusive of interest and costs. As set forth below, there is an actual controversy between the parties.

6. EIC is informed and believes and thereon alleges that Cardio is subject to personal jurisdiction in the State of California because, among other things, it is a citizen of the State of California and/or conducts substantial, continuous, and systematic business within California, contracts to transact business or engage in conduct within California that it knows or should reasonably expect would have consequences in California, and derives substantial revenue from interstate commerce.

7. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(a)(2) and (3) because this is a civil action in which the subject matter jurisdiction is founded only on diversity of citizenship and is brought in a judicial district in which Cardio is subject to personal jurisdiction.

8. This action is filed in the Eastern Division of the United States District Court for the Central District of California in compliance with Central District of California General Order 349.

## THE MAUTHE LITIGATION

9. Robert W. Mauthe, M.D., P.C. ("Mauthe"), on behalf of himself and all others similarly situated, filed the Mauthe Litigation against Cardio on or about April 2, 2015 in the United States District Court for the Middle District of Pennsylvania. A true and correct copy of the operative complaint filed in the Mauthe Litigation (the "Complaint") is attached hereto as Exhibit "A."

10. Effective February 4, 2016, the Mauthe Litigation was transferred pursuant to court order to the United States District Court for the Eastern District of Pennsylvania, where it is currently pending.

11. In the Complaint initiating the Mauthe Litigation, Mauthe asserts a cause of action for Violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 (the "TCPA"). Mauthe asserts that Cardio violated the TCPA by sending unsolicited facsimiles ("Junk Faxes"). Mauthe asserts that Cardio also violated the TCPA by failing to provide a required opt-out notice on the Junk Faxes. Mauthe seeks to certify a class of similarly situated parties pursuant to section 227(b)(3) of the TCPA.

12. In the Complaint, Mauthe also asserts a cause of action for injunctive relief to prevent future violations of the TCPA.

13. Mauthe seeks civil penalties from Cardio pursuant to the TCPA, in the amount of $500 for each negligent violation of the TCPA and $1,500 for each willful violation of the TCPA.

## THE EIC POLICIES

14. EIC issued the EIC Policies to Cardio. True and correct copies of the EIC Policies are attached as Exhibits "B" (the 2013-2014 Policy) and "C" (the 2014-2015 Policy) and are incorporated herein by reference.

15. The EIC Policies provide liability insurance coverage to Cardio under a "Specified Professional Liability and General Liability Insurance Policy" (Form EIC 4117 8/98) with "Coverage A – Each Claim" policy limits of $1 million, "Coverage B – Each Accident" policy limits of $1 million (subject to a $2,500 deductible for "Each Claim" and "Each Accident"), and "Coverage A and Coverage B Combined – Policy Aggregate" limits of $3 million. The pertinent insuring provisions in Policy Form EIC 4117 8/98, as amended by endorsement no. EIC 4285-01 2/04, provide in relevant part:

> **Specified Professional Liability and General Liability Insurance Policy**
> 
> …
> 
> **THE COVERAGE**
> 
> 1. **COVERAGE A — Professional Liability And Claims Made Clause:** Subject to both the limits of liability and deductible, the Company shall pay on behalf of the Coverage A Insured sums which the Coverage A Insured shall become legally obligated to pay as Damages as a result of CLAIMS FIRST MADE AGAINST THE COVERAGE A INSURED DURING THE POLICY PERIOD by reason of any act, error or omission in Professional Services as specified in the Declarations committed or alleged to have been committed by the Coverage A Insured or by any person for whom the Coverage A Insured is legally liable provided always that such act, error or omission happens:
> 
>    a. During the Policy Period; or

      b.    Subsequent to the Retroactive Date as stated in the Declarations provided that on or prior to the effective date of this policy, the Coverage A Insured had no knowledge of circumstances, involving such act, error or omission, which may result in a Claim under this policy.

  **2.**  **COVERAGE B — General Liability and Claims Made Clause:** Subject to both the limits of liability and deductible, the Company shall pay on behalf of the Coverage B Insured sums which the Coverage B Insured shall become legally obligated to pay as Damages as a result of CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD for Personal Injury or Property Damage to which this insurance applies, caused by an Accident PROVIDED ALWAYS THAT:

      a.    The Accident takes place subsequent to the Retroactive Date as stated in the Declarations; and

      b.    Solely in respect to the Products Hazard or Completed Operations Hazard, as defined herein, such Personal Injury or Property Damage arises out of only those operations, goods or products specified in the Declarations. …

16.    The Declarations to the EIC Policies specify that the Professional Services of the Insured, to which the terms of the EIC Policies apply, are limited to "Medical Document Transcription Services for others for a fee."

17.    The pertinent Definitions in Policy Form EIC 4117 8/98 provide in relevant part:

**DEFINITIONS**

**Accident** means, wherever used in this policy, an event or happening, including continuous or repeated exposure to substantially the same general harmful conditions, which involves one or more persons or entities, and which results in Personal Injury or Property Damage. …

**Claim** means, wherever used in this policy:

1.    Under Coverage A, a demand received by the Coverage A Insured for compensation for Damages, including the service of suit or institution of arbitration proceedings against the Coverage A Insured.

2. Under Coverage B, a notice received by the Coverage B Insured of an intention to hold the Coverage B Insured responsible for an Accident involving this policy and shall include the service of suit or institution of arbitration proceedings against the Coverage B Insured.

**Claim Expenses** means, wherever used in this policy:

1. Fees charged by any lawyer designated by the Company;

2. All other fees, costs and expenses resulting from the investigation, adjustment, defense and appeal of a Claim, if incurred by the Company;

3. Fees charged by any lawyer designated by the Insured with the written consent of the Company.

However, "Claim Expenses" does not include salary charges of regular employees or officials of the Company or of any supervisory counsel retained by the Company. …

**Damages** means, wherever used in this policy, compensatory damages and does not include:

1. Fines, exemplary or punitive damages, statutory or other penalties, trebled or other multiple damages imposed pursuant to statute or regulation or any exemplary or punitive damages of whatsoever kind imposed pursuant to statute or regulation; or

2. Judgments or awards deemed uninsurable by law. …

**Personal Injury** means, wherever used in this policy:

1. Bodily injury, sickness or disease including death resulting therefrom sustained by any person;

2. False arrest, detention or imprisonment, wrongful entry or eviction or other invasion of private occupancy, malicious prosecution or humiliation, except when maliciously inflicted by, at the direction of, or with the consent or acquiescence of the Insured;

3. The publication or utterance of libel or slander or other defamatory or disparaging material, or a publication or utterance in violation of an individual's right of privacy except when maliciously published or

uttered by, at the direction of, or with the consent or acquiescence of the Insured. …

**Property Damage** means, wherever used in this policy, physical injury to or destruction of tangible property, including consequential loss of use thereof, or loss of use of tangible property which has not been physically injured or destroyed provided such loss of use is caused by an Accident.

18. The pertinent Limits of Liability provisions in Policy Form EIC 4117 8/98 provide in relevant part:

**LIMITS OF LIABILITY**

1. **Coverage A – Professional Liability Coverage – Each Claim:** The total liability of the Company for the combined total of Damages and Claim Expenses for each CLAIM FIRST MADE AGAINST THE COVERAGE A INSURED DURING THE POLICY PERIOD including the optional Extended Discovery Period, if purchased, shall not exceed the limit of liability stated in Item 7 of the Declarations as applicable to "each Claim."

2. **Coverage B - General Liability - Each Accident**: The total liability of the Company for the combined total of Damages and Claim Expenses for all CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD including the optional Extended Discovery Period, if purchased, because of all Personal Injury and Property Damage sustained by one or more persons or entities as the result of any one Accident shall not exceed the limit of liability stated in Item 7 of the Declarations as applicable to "each Accident."

3. **Coverage A and B – Policy Aggregate:** Subject to the above provisions respecting "each Claim" under Coverage A and "each Accident" under Coverage B, the total liability of the Company for the combined total of Damages and Claim Expenses for all CLAIMS FIRST MADE AGAINST THE INSURED DURING THE POLICY PERIOD … shall not exceed the limit of liability stated in Item 7 of the Declarations as "policy aggregate."

4. **Deductible:** With respect to Coverage A and B individually, the deductible amounts stated in Item 8 of the Declarations shall be paid by the Authorized Named Insured and shall be applicable, as stated,

to each Claim or each Accident and shall include the combined total of Damages and Claim Expenses, whether or not payment for Damages is made. …

19. The 2014-2015 Policy contains a Broadening Endorsement (Form No. EIC 4281-01 01/07), which provides in relevant part:

**BROADENING ENDORSEMENT**

In consideration of the premium charged, it is hereby understood and agreed that coverage as afforded by Coverage B of this policy is amended to include the following: …

II. PERSONAL INJURY AND ADVERTISING INJURY LIABILITY COVERAGE

(A) the Company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of personal injury or advertising injury to which this insurance applies, sustained by any person or organization and arising out of the conduct of the Named Insured's business, within the policy territory, and the company shall have the right and duty to defend any suit against the insured seeking damages on account of such injury even if any of the allegations of the suit are groundless, false or fraudulent, and may make such investigation and settlement of any claim or suit as it deems expedient, but the company shall not be obligated to pay any claim or judgment or to defend any suit after the applicable limit of the company's liability has been exhausted by payment of judgments or settlements. …

(C) Limits of Liability

Limits apply each and every occurrence and in the aggregate.

20. The pertinent Definitions in Policy Form EIC 4281-01 01/07 provide in relevant part:

(D) Additional Definitions

"Advertising Injury" means injury arising out of an offense committed during the policy period occurring in the course of the

named insured's advertising activities, if such injury arises out of libel, slander, defamation, violation of right of privacy, piracy, unfair competition, or infringement of copyright, title, or slogan.

"Personal Injury" whenever used in this endorsement, means injury arising out of one or more of the following offenses committed during the policy period:

(1) false arrest, detention, imprisonment, or malicious prosecution;

(2) wrongful entry or eviction or other invasion of the right of private occupancy;

(3) a publication or utterance

    (a) of a libel or slander or other defamatory or disparaging material, or

    (b) in violation of an individual's right of privacy; except publications or utterances in the course of or related to the advertising, broadcasting, publishing or telecasting activities conducted by or on behalf of the Named Insured shall not be deemed personal injury.

## TENDER TO EIC

21. Cardio tendered the Mauthe Litigation to EIC for insurance coverage on or around April 16, 2015.

22. On or around April 22, 2015, EIC agreed to defend Cardio in the Mauthe Litigation, and appointed defense counsel.

23. On July 13, 2015, after further investigating Cardio's claim for coverage, EIC issued a coverage position letter setting forth its determination that there is no potential for coverage under the EIC Policies, but advising Cardio that it would continue to defend Cardio in the Mauthe Litigation subject to a full and complete reservation of rights. A true and correct copy of the July 13, 2015 letter is attached hereto as Exhibit "D."

24. As set forth in its July 13, 2015 letter, EIC expressly reserved the right to seek reimbursement from Cardio for amounts paid on behalf of Cardio from the date of the coverage position letter forward, in connection with the Mauthe Litigation.

## FIRST CAUSE OF ACTION

**(For Declaratory Relief – No Coverage Obligations Under the EIC Policies)**

25. EIC hereby incorporates and re-alleges the allegations in Paragraphs 1-24 as if fully set forth herein.

26. An actual controversy has now arisen and exists between EIC on the one hand, and Cardio on the other hand, concerning EIC's rights and duties under the EIC Policies in connection with the Mauthe Litigation.

27. EIC contends that it has no coverage obligations to Cardio for the Mauthe Litigation under the EIC Policies.

28. Upon information and belief, Cardio contends that coverage is available for the Mauthe Litigation under one or both of the EIC Policies.

29. EIC seeks a judicial declaration that it has no coverage obligations to Cardio under the 2013-2014 Policy for the Mauthe Litigation, because the applicable "Claim" (the Mauthe Litigation) was first made against Cardio after termination of the 2013-2014 Policy.

30. EIC seeks a judicial declaration that it has no coverage obligations to Cardio under the EIC Policies, because the civil penalties and injunctive relief sought in the Mauthe Litigation are not "Damages" covered under the EIC Policies.

31. In the alternative, even if the Mauthe Litigation seeks covered "Damages," EIC seeks a judicial declaration that there is no coverage for the Mauthe Litigation for the following reasons:

  (a) There is no coverage under the EIC Policies' "Professional Liability" coverage (Coverage A), because the Mauthe Litigation does not allege any act, error, or omission in Cardio's "Professional Services as specified in the Declarations," namely "Medical Document

Transcription Services for others for a fee." The Mauthe Litigation seeks damages for Cardio's alleged violations of the TCPA by sending Junk Faxes, not for any act, error, or omission in Cardio's paid medical document transcription services.

(b) There is no coverage under the EIC Policies' "General Liability" coverage (Coverage B), because the Mauthe Litigation does not allege any "Property Damage" or any enumerated offense constituting "Personal Injury," as those terms are defined under the EIC Policies.

(c) There is no coverage under the 2014-2015 Policy's Broadening Endorsement to Coverage B, because the Mauthe Litigation does not allege any enumerated offense constituting "advertising injury" or "personal injury," as those terms are defined under the Broadening Endorsement.

(d) There is no coverage for Cardio under any other provision in the EIC Policies for the Mauthe Litigation.

32. In the alternative, even if either or both of the EIC Policies otherwise provide coverage for the Mauthe Litigation, EIC's coverage obligations are eliminated by California Insurance Code section 533 as a matter of law, because section 533 precludes coverage for "loss caused by the willful act of the insured."

33. In addition to and in the alternative to the terms, conditions, exclusions, and definitions set forth above, the EIC Policies contain other material terms, conditions, exclusions, and definitions upon which EIC may rely in support of its claim that it has no coverage obligations to Cardio in the Mauthe Litigation.

# SECOND CAUSE OF ACTION

## (For Declaratory Relief – "Advertising Injury" Limits Under the 2014-2015 Policy)

34. EIC hereby incorporates and re-alleges the allegations in Paragraphs 1-33 as if fully set forth herein.

35. To the extent EIC does not prevail on its First Cause of Action for Declaratory Relief, and the Court finds that EIC has a coverage obligation to Cardio for "advertising injury" under the 2014-2015 Policy's Coverage B Broadening Endorsement in connection with the Mauthe Litigation, which EIC denies, an actual controversy exists between EIC on the one hand, and Cardio on the other hand, regarding the policy limits available to Cardio.

36. EIC contends that to the extent "advertising injury" coverage is available to Cardio in connection with the Mauthe Litigation under the 2014-2015 Policy's Broadening Endorsement, the 2014-2015 Policy's $1 million "Coverage B – Each Accident" limit applies to each occurrence, offense, or claim.

37. EIC contends that to the extent "advertising injury" coverage is available to Cardio in connection with the Mauthe Litigation under the 2014-2015 Policy's Broadening Endorsement, the 2014-2015 Policy's $2,500 "Coverage B – Each Accident" deductible also applies to each occurrence, offense, or claim.

38. EIC contends that to the extent "advertising injury" coverage is available to Cardio in connection with the Mauthe Litigation under the 2014-2015 Policy's Broadening Endorsement, there is a single "occurrence," so the 2014-2015 Policy's $1 million "Coverage B – Each Accident" limit of liability applies to all Damages and Claim Expenses incurred in connection with the Mauthe Litigation, subject to the 2014-2015 Policy's $2,500 "Coverage B – Each Accident" deductible.

39. As an alternative to the contention set forth in the preceding paragraph, EIC contends that to the extent "advertising injury" coverage is available to Cardio in connection with the Mauthe Litigation under the 2014-2015 Policy's Broadening

Endorsement, and to the extent that each transmission of Junk Faxes constitutes a separate "occurrence," the 2014-2015 Policy's $1 million "Coverage B – Each Accident" limit of liability applies separately to each transmission, with each transmission also subject to the 2014-2015 Policy's $2,500 "Coverage B – Each Accident" deductible.

40. Upon information and belief, Cardio contends that to the extent "advertising injury" coverage is available to Cardio in connection with the Mauthe Litigation under the 2014-2015 Policy's Broadening Endorsement, the 2014-2015 Policy's $3 million "Coverage A and Coverage B Combined – Policy Aggregate" limit of liability applies to all Damages and Claim Expenses incurred in connection with the Mauthe Litigation.

41. Accordingly, EIC seeks a judicial declaration that to the extent "advertising injury" coverage is available to Cardio in connection with the Mauthe Litigation under the 2014-2015 Policy's Broadening Endorsement, the 2014-2015 Policy's $1 million "Coverage B – Each Accident" limit and $2,500 deductible apply to each occurrence, offense, or claim under the Broadening Endorsement's "advertising injury" coverage, and, thus, apply to all Damages and Claim Expenses incurred in connection with the Mauthe Litigation.

42. As an alternative to the judicial declaration sought in the preceding paragraph, EIC seeks a judicial declaration that to the extent "advertising injury" coverage is available to Cardio in connection with the Mauthe Litigation under the 2014-2015 Policy's Broadening Endorsement, and to the extent each transmission of Junk Faxes constitutes a separate "occurrence," the 2014-2015 Policy's $1 million "Coverage B – Each Accident" limit of liability applies separately to each transmission, with each transmission also subject to the 2014-2015 Policy's $2,500 "Coverage B – Each Accident" deductible.

## THIRD CAUSE OF ACTION

### (For Declaratory Relief – Right to Reimbursement)

43. EIC hereby incorporates and re-alleges the allegations in Paragraphs 1-42 as if fully set forth herein.

44. In its position letter of July 13, 2015, EIC reserved the right to seek reimbursement of Claim Expenses, indemnity, and all other sums paid in connection with the Mauthe Litigation that are not covered under the EIC Policies.

45. There exists a genuine and bona fide dispute, and an actual controversy and disagreement between EIC on the one hand, and Cardio on the other hand, concerning whether EIC has the right to reimbursement of amounts incurred on behalf of Cardio in connection with the Mauthe Litigation. EIC denies that it has any coverage obligation to Cardio in connection with the Mauthe Litigation. EIC understands that Cardio disputes EIC's coverage position.

46. EIC seeks reimbursement from Cardio pursuant to *Buss v. Superior Court (Transamerica Insurance Company)*, 16 Cal. 4th 35 (1997), *Scottsdale Insurance Co. v. MV Transportation*, 36 Cal. 4th 643 (2005), and *Blue Ridge Insurance Co. v. Jacobsen*, 25 Cal. 4th 489 (2001), of any and all Claim Expenses, indemnity, and all other sums paid to or on behalf of Cardio in connection with claims asserted in the Mauthe Litigation for which there is no coverage obligation under the EIC Policies.

## FOURTH CAUSE OF ACTION

### (For Declaratory Relief – Right to Withdraw From the Defense of the Mauthe Litigation)

47. EIC hereby incorporates Paragraphs 1-46 as if fully set forth herein.

48. EIC has advised Cardio that it is defending the Mauthe Litigation pursuant to a reservation of rights, including the right to withdraw from Cardio's defense.

49. EIC seeks a judicial declaration that it has a right to withdraw from the defense of Cardio in the Mauthe Litigation.

50. EIC contends it has no duty to defend Cardio in the Mauthe Litigation pursuant to the EIC Policies' terms, conditions, exclusions, and definitions, and has the right to withdraw from Cardio's defense in the Mauthe Litigation.

51. An actual controversy has arisen and now exists between EIC and Cardio in that EIC contends and, upon information and belief, Cardio denies, that EIC has the right to withdraw from the defense of Cardio in the Mauthe Litigation.

52. Such a declaration is necessary and appropriate at this time in order that EIC may ascertain its rights and duties as to Cardio under the EIC Policies.

## **PRAYER**

WHEREFORE, plaintiff EIC prays for judgment against Cardio as follows:

1. For a judicial declaration that EIC has no coverage obligations to Cardio in the Mauthe Litigation;

2. If the Court determines that EIC has any coverage obligation to Cardio for "advertising injury" under the 2014-2015 Policy's Coverage B Broadening Endorsement in connection with the Mauthe Litigation, for a judicial declaration that the $1 million "Coverage B – Each Accident" limit and $2,500 deductible apply to all Damages and Claim Expenses incurred in connection with the Mauthe Litigation;

3. As an alternative to the Prayer in the preceding paragraph, to the extent "advertising injury" coverage is available to Cardio in connection with the Mauthe Litigation under the 2014-2015 Policy's Broadening Endorsement, and to the extent each transmission of Junk Faxes constitutes a separate "occurrence," a judicial declaration that the 2014-2015 Policy's $1 million "Coverage B – Each Accident" limit of liability applies separately to each transmission, with each transmission also subject to the 2014-2015 Policy's $2,500 "Coverage B – Each Accident" deductible;

4. For a judgment awarding EIC the reimbursement of Claim Expenses paid by EIC on behalf of Cardio from July 13, 2015 forward, for the defense of

claims in the Mauthe Litigation for which there is no coverage under the EIC Policies;

5. For a judgment awarding EIC the reimbursement of indemnity amounts paid by EIC on behalf of Cardio for claims in the Mauthe Litigation for which there is no coverage under the EIC Policies;

6. For a declaration that EIC may withdraw from its defense of the Mauthe Litigation;

7. For costs of suit incurred herein; and

8. For such other and further relief as this Court deems just and proper.

Dated: February 1, 2017     TRESSLER LLP

By: /s/ Elizabeth L. Musser
Elizabeth L. Musser
Yvonne M. Schulte
Attorneys for Plaintiff
EVANSTON INSURANCE COMPANY

LA #154690 (10988-08)